UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN A. BYBEE, | ) | |
| *Plaintiff*, | ) | |
| vs. | ) | 1:11-cv-271-JMS-DML |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| *Defendant*. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff John A. Bybee applied for supplemental security income and disability insurance benefits (collectively, "disability benefits") from the Social Security Administration ("SSA") on June 7, 2005. [R. at 16.] Mr. Bybee's applications were denied. [R. at 7.] A hearing before an Administrative Law Judge ("ALJ") was held on September 2, 2009, and a partially favorable decision was handed down on October 6, 2009, finding that Mr. Bybee was entitled to receive disability benefits from April 23, 2005, through November 30, 2006, but not thereafter. [R. at 21.] Mr. Bybee appealed the unfavorable portion of the decision to the Appeals Council, which granted his request for review but ultimately affirmed the decision of the ALJ. Mr. Bybee filed this action under 42 U.S.C. § 405(g), asking this Court to review the portion of the final decision denying his disability benefits.

**I.**
**BACKGROUND**

Mr. Bybee, now 32 years old, was involved in a severe car accident on April 23, 2005, and injured his left leg. [R. at 200.] Almost one year later, Mr. Bybee had a below-knee amputation on his left leg because he continued to suffer from severe pain in his left knee, ankle, and

foot. [R. 186, 732-33.] Mr. Bybee underwent physical therapy and, with pain management medicine, began walking with the aid of a prosthetic device in July 2006. [R. 701.] When he experienced skin breakdowns around his amputation site that prevented him from comfortably wearing his prosthesis, Mr. Bybee used crutches. [R. at 840.]

### A. Medical Expert's Testimony

At the hearing held by the ALJ on September 2, 2009, Dr. Lloyd Stump provided medical testimony. [R. at 822.] Dr. Stump testified that below-the-knee amputees who recover well can return to sedentary work with a prosthesis, lifting up to 20 pounds while seated. [R. at 850.] Dr. Stump made a distinction between an amputee not using a prosthetic device and the inability to use a prosthetic device as the relevant requirement of disability under Listing 1.05B (the details of which will be discussed below). [R. at 853-855.]

Dr. Stump testified that Mr. Bybee likely would have healed enough by October 2006 for a prosthesis. [R. at 849-50.] He opined that Mr. Bybee's medical records were "sketchy" past that time regarding his ability to function. [*Id.*] Dr. Stump concluded that by December 2006, Mr. Bybee should have been able to do sedentary work. [Dkt. 851-52.] When shown Listing 1.05B, Dr. Stump concluded that "unless it would be something that's a longer period of time," Mr. Bybee's intermittent skin breakdowns would not meet the duration requirement of Listing 1.05B. [R. at 855.]

### B. Vocational Rehabilitation Expert's Testimony

Vocational rehabilitation expert Robert Barber also testified at the September 2009 hearing. [R. at 822.] Mr. Barber testified that Mr. Bybee was a younger individual with the equivalent of a high school education and was attending college classes on a part-time basis. [R. at 857.] He had no transferable work skills. [R. at 857.] Mr. Barber testified that Mr. Bybee could

perform sedentary, unskilled labor, [r. at 857], and that jobs existed in the national economy that met his limitations, including positions as a general office clerk, a ticket checker, and a surveillance monitor, [r. at 857].

### C. Mr. Bybee's Testimony

At the hearing, Mr. Bybee testified that he was living in an apartment with roommates and attending college classes at Indiana University-Purdue University at Indianapolis ("IUPUI") two days per week. [R. at 826-27, 835.] He testified that he was a history major, roughly a sophomore, and that the classes were going "good so far." [R. at 827, 829.] He is interested in law school and would like to take the LSAT. [R. at 829.]

Because of previous drug addiction issues, Mr. Bybee testified that he attended daily Alcoholic Anonymous meetings. [R. at 838, 845.] Mr. Bybee had a valid driver's license and was able to drive himself, but he required assistance at the store and with laundry. [R. at 830, 836.] Mr. Bybee testified that he was able to sit in a comfortable chair for up to an hour and could lift up to twenty pounds with both hands. [R. at 834-35.] He used a computer to research and to study. [R. at 836.]

Mr. Bybee testified that his prosthetic device fit well and that he walked with the assistance of a cane. [R. at 828.] Mr. Bybee had a handicap parking sticker, which allowed him preferential parking within forty feet of classes, but he testified that he experienced skin breakdowns "just from walking." [R. at 840.] Mr. Bybee stated that over the past year, he had three skin breakdowns that caused him to take several weeks off from school. [R. at 840.] He stated that when he experienced skin breakdowns and infections on his amputation site, he could not wear his prosthesis and was required to use crutches. [R. at 840.]

### D. Dr. Mansoori Letter

One week after the hearing, Mr. Bybee submitted a letter from Dr. Mansoori, a certified prosthetist. [R. 463.] Dr. Mansoori stated that he saw Mr. Bybee in his office on September 9, 2009, and fitted him with a new prosthesis that is "exactly [the] same" as the prosthesis Mr. Bybee received in 2006. [*Id.*] Dr. Mansoori opined that the prosthesis fits Mr. Bybee "to the best of [its] ability" and that Mr. Bybee "will likely continue to have this recurring issue of skin breakdown due to the daily ambulation for his schooling." [*Id.*]

### E. Supplemental Filings to Appeals Council

After the ALJ's decision, which is detailed more fully below, Mr. Bybee filed a request for review with the Appeals Council, which was granted on November 23, 2010. [R. at 7.] The Appeals Council notified Mr. Bybee that it would consider any comments or new and material evidence that he submitted within thirty days. [R. at 7.] Mr. Bybee submitted additional medical records from St. Vincent's hospital regarding an infection that occurred after the ALJ's decision and an affidavit from his father. The Appeals Council did not consider those in its decision.[1]

## II.
### UNDERLYING DECISIONS

### A. The ALJ's Decision

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on October 6, 2009. [R. at 16-21.] The ALJ found as follows:

---

[1] The Appeals Council's decision stated that it did not receive any additional comments or evidence from Mr. Bybee, [R. at 7], and the supplemental records Mr. Bybee filed were not included in the underlying record. Mr. Bybee filed a motion to supplement the record, which this Court granted. [Dkts. 27; 28.] The Commissioner did not object to the motion to supplement, noting that Mr. Bybee had provided confirmation that he mailed the materials at issue to the Appeals Council in a timely manner. [Dkt. 31 at 2.]

- At Step One of the analysis, the ALJ found that Mr. Bybee had not engaged in substantial gainful activity[2] since the alleged onset date of his disability. [R. at 18, 20.]

- At Step Two, the ALJ found that Mr. Bybee suffered from a severe impairment, specifically the fracture to his left leg that resulted in a below-the-knee amputation. [R. at 21.]

- At Step Three, the ALJ found that Mr. Bybee's impairments met Listing 1.05B from the date of the car accident on April 23, 2005, through November 30, 2006. The ALJ concluded, however, that as of December 1, 2006, Mr. Bybee was able to perform sedentary exertion in safe work settings, which qualifies as a medical improvement related to his ability to work. [R. at 21.]

- At Step Four, the ALJ found that Mr. Bybee did not have the capacity to perform any of his past relevant work. [R. at 18, 21.]

- Finally, at Step Five, considering Mr. Bybee's age, education, work experience, RFC, and the testimony of a vocational rehabilitation expert, the ALJ determined that jobs existed in the State of Indiana that Mr. Bybee could perform positions such as a general office clerk, a ticket checker, and a surveillance monitor. [R. at 19-21.]

Based on these findings, the ALJ concluded that Mr. Bybee was entitled to receive disability benefits from April 23, 2005, through November 30, 2006, but not thereafter. [R. at 21.] The ALJ did not address the letter from Dr. Mansoori that Mr. Bybee submitted after the hearing.

**B. Decision of the Appeals Council**

The Appeals Council adopted the ALJ's decision regarding the applicable administrative provisions, the issues in the case, and the evidentiary facts. [R. at 7.] The Appeals Council also adopted the ALJ's finding that Mr. Bybee was disabled and entitled to benefits from April 23, 2005, through November 30, 2006. [*Id.*] With regard to the period for which the ALJ denied benefits, the Appeals Council agreed with those findings as supported by the medical evidence and the expert testimony of Dr. Stump. [R. at 8.]

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

The Appeals Council also addressed the post-hearing letter from Dr. Mansoori. It found that Dr. Mansoori, a certified prosthetist, is "not an acceptable medical source" within the meaning of the SSA regulations. [R. at 8 n.3.] It still considered his letter as another source pursuant to 20 C.F.R. § 404.1527(d) and § 416.927(d), but it ultimately concluded that he did not opine that Mr. Bybee is disabled or otherwise incapable of gainful employment. [R. at 8.] The Appeals Council further noted that such an opinion would be inconsistent with other evidence in the record and unsupported by Mr. Bybee's history of medical treatment. [*Id.*]

The Appeals Council acknowledged that there was some evidence of skin breakdown in the record but concluded that a preponderance of the evidence indicated that Mr. Bybee is able to ambulate effectively with a prosthetic limb and medication for breakthrough pain. [R. at 8.] Mr. Bybee's testimony regarding his daily activities and his ability to sit through class without debilitating pain supported the ALJ's conclusion that Mr. Bybee could perform sedentary exertional work. [*Id.*] The Appeals Council also cited evidence that Mr. Bybee had submitted a job application for a delivery driver position, which it noted is a medium exertional job. [*Id.* (citing R. at 519).] The Appeals Council found that this "apparent willingness to work" was "inconsistent with an inability to perform even sedentary exertional work." [R. at 8.] Based on these conclusions, the Appeals Council affirmed the ALJ's finding that as of December 1, 2006, Mr. Bybee was no longer entitled to disability benefits. [R. at 9.]

### III.
#### STANDARD OF REVIEW

The Commissioner of Social Security must use the following five-step inquiry when analyzing a disability claim:

> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively dis-

abling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

The Commissioner has delegated this authority to the ALJ, subject to review by the Appeals Council. If the Appeals Council grants a petition for review, it will review the evidence in the ALJ hearing record and any new and material evidence. 20 C.F.R. § 404.979. After doing so, the Appeals Council will either make a decision or remand the case to the ALJ. 20 C.F.R. § 404.979. If it issues its own decision, it will base that decision on the preponderance of the evidence. 20 C.F.R. § 404.979. An Appeals Council decision becomes the Commissioner's final decision for purposes of judicial review. *Schoenfeld v. Apfel*, 237 F.3d 788, 792 n.2 (7th Cir. 2001).

The Appeals Council only considers new and material evidence that relates to the period on or before the date of the ALJ decision. 20 C.F.R. § 404.970(b). Records not submitted to the ALJ without an explanation as to why they were not submitted are not "new" and will not be considered by the Appeals Council. *See Schmidt v. Barnhart*, 395 F.3d 737, 742-43 (7th Cir. 2005). Additionally, medical evidence postdating the ALJ's decision that does not speak to the claimant's condition at or before the time of the administrative hearing "could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008). This principle holds even if the records document new treat-

ment for "the very same ailments" at issue in the underlying disability proceedings. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Evidence suggesting that a claimant has developed additional impairments or that his impairments have worsened may form the basis for a new application but are not a basis to reverse the decision on a previously submitted application. *Getch*, 539 F.3d at 484.

By contrast, this Court's role is limited to ensuring that the Commissioner applied the correct legal standards and that substantial evidence exists for the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). If the Commissioner committed no legal error and substantial evidence exists to support the decision, the Court must affirm the denial of benefits. Otherwise the Court will remand the matter for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

The doctrine of harmless error "is fully applicable to judicial review of administrative decisions." *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (social security case). The Court cannot remand an agency's decision based on harmless errors. *Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006).

## IV.
### DISCUSSION

Mr. Bybee alleges a Step Three error. He challenges the ALJ's decision to rely exclusively on Dr. Stump's testimony to find that Mr. Bybee did not meet Listing 1.05B after November 30, 2006. [Dkt. 21 at 4.] He directs the Court to three additional pieces of evidence that he contends show he continued to meet Listing 1.05B after November 30, 2006: 1) a post-hearing

letter from prosthetist Dr. Mansoori that he submitted to the ALJ; 2) new medical records from St. Vincent's Hospital that he submitted to the Appeals Council; and 3) an affidavit from Mr. Bybee's father that he submitted to the Appeals Council. Mr. Bybee asks this Court to remand his case so that this supplemental evidence can be considered. [Dkt. 21 at 7.]

### A. Step Three Standard

A claimant is deemed disabled at Step Three if he has a condition with symptoms that meet or exceed the criteria of one or more of the Listed Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P, App. 1. Alternatively, if the claimant's symptoms do not correspond exactly with a Listing's requirements, he can still be deemed disabled if medical evidence establishes that his symptoms are equal in severity and duration to those of a Listed Impairment. 20 C.F.R. § 404.1526(a), (b). A claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (citing *Ribaudo*). The ALJ should mention the specific listing that is under consideration; failure to do so, if combined with a perfunctory analysis, may require a remand. *Ribaudo*, 458 F.3d at 583.

To meet or medically equal Listing 1.05B (Amputation), a claimant must prove that one or both lower extremities were amputated above the tarsal region and that he has "stump complications resulting in medical inability to use a prosthetic device to ambulate effectively . . . which have lasted or are expected to last for at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 1.05B. To ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B(2)(b). Examples of ineffective

ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes . . . ." *Id.*

### B. Supplemental Materials

Mr. Bybee argues that the supplemental materials he submitted prove that he met Listing 1.05B after November 30, 2006 because despite his well-fitting prosthesis, he continues to have skin breakdowns that require him to use crutches. Mr. Bybee does not present an independent argument that he met Listing 1.05B after November 30, 2006, without consideration of these supplemental materials.

#### 1. Dr. Mansoori's Letter

As previously detailed, Mr. Bybee submitted a letter to the ALJ from Dr. Mansoori one week after the hearing. The ALJ did not address Dr. Mansoori's letter in his decision. Mr. Bybee argues that Dr. Mansoori's letter confirms that his prosthesis fits to the best of its ability and that he will continue to have skin breakdowns that require him to use crutches, allegedly prohibiting him from ambulating effectively and entitling him to benefits past November 30, 2006.

Although Mr. Bybee correctly observes that the ALJ did not address Dr. Mansoori's letter in his decision, Mr. Bybee fails to acknowledge that the Appeals Council reviewed Dr. Mansoori's letter in conjunction with other evidence of Mr. Bybee's medical condition and affirmed the ALJ's decision to deny him benefits past November 30, 2006. As noted above, the Appeals Council found that Dr. Mansoori, a certified prosthetist, is "not an acceptable medical source" within the meaning of the SSA regulations. [R. at 8 n.3.] It considered his letter as another source pursuant to 20 C.F.R. § 404.1527(d) and § 416.927(d) but emphasized that Dr. Mansoori did not opine that Mr. Bybee is disabled or otherwise incapable of gainful employment

and that such an opinion would be inconsistent with other evidence in the record and unsupported by the history of medical treatment. [R. at 8.] Mr. Bybee's failure to acknowledge the Appeals Council's discussion of Dr. Mansoori's letter, much less challenge its rationale, requires the Court to reject his argument that the ALJ erred by not addressing Dr. Mansoori's letter.

### 2. Additional Medical Records from St. Vincent's Hospital

Mr. Bybee submitted additional medical records from St. Vincent's Hospital to the Appeals Council. The Appeals Council did not consider those medical records in affirming the ALJ's decision. Mr. Bybee argues that his case should be remanded so that these records can be considered.

Mr. Bybee admits that the medical records at issue are from his "latest infection episode" and "post date the date of the [ALJ] decision." [Dkt. 29 at 1.] That admission is fatal to his argument. As indicated above, the Appeals Council only considers both new and material evidence that relates to the period on or before the date of the ALJ decision. 20 C.F.R. § 404.970(b). Medical evidence postdating the ALJ's decision that does not speak to the claimant's condition at or before the time of the administrative hearing "could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch*, 539 F.3d at 484.

Though the additional medical records qualify as new, they are not material. Therefore, the Appeals Council did not err by not considering them because it did not have to do so. While these records may form the basis for a new disability application, they do not support the remand Mr. Bybee requests.

### 3. Father's Affidavit

Mr. Bybee submitted an affidavit from his father, Don Bybee, to the Appeals Council. [Dkt. 29 at 9-10.] The Appeals Council did not consider the affidavit in affirming the ALJ's decision. Mr. Bybee argues that his father's affidavit confirms that although Mr. Bybee "maintain[s] a positive attitude" about school and returning to work, "the reality of [Mr. Bybee's] disabling condition derailed his aspirations." [Dkt. 30 at 3.] Mr. Bybee contends that his case should be remanded so that his father's affidavit can be considered.

Don's affidavit addresses three topics. First, Don attests that his son has completed a total of six credit hours at IUPUI since 2006 and that he has been forced to withdraw from classes in three separate semesters because of skin infections resulting from walking to and from class. [Dkt. 29 at 9 ¶¶ 3-4.] Second, Don attests that since the most recent skin infection, his son rarely uses his prosthesis and has been advised that another infection will lead to further surgery. [*Id.* at ¶¶ 5-6.] Third, Don confirms that his son applied for a job as a delivery driver, but he opines that his son would not have been able to perform that job because of the amount of walking it would require. [*Id.* at ¶¶ 7-8.]

As indicated above, for any error to possibly exist, Mr. Bybee must show that his father's affidavit is both new and material. Mr. Bybee does not explain why he could not have submitted an affidavit from his father addressing these topics to the ALJ. As previously noted, records not submitted to the ALJ without an explanation as to why they were not submitted are not "new" and will not be considered by the Appeals Council. *Schmidt*, 395 F.3d at 742-43. And the portion of the affidavit addressing Mr. Bybee's recent skin infection does not speak to the claimant's condition at or before the time of the administrative hearing; consequently, it "could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch*,

539 F.3d at 484. For these reasons, any error resulting from the Appeals Council not considering Mr. Bybee's father's affidavit is harmless.[3]

## V.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent, and even claimants with substantial impairments are not necessarily entitled to benefits. *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis to overturn the decision that Mr. Bybee does not qualify for disability benefits past November 30, 2006. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

12/09/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE

---

[3] Even if the Appeals Council would have been obligated to consider the affidavit, it would have rejected it. Don's affidavit contradicts evidence in the record and paints a bleaker picture of Mr. Bybee's condition than Mr. Bybee testified to at the ALJ hearing. Don attests that "each time [Mr. Bybee] had an infection he is down at [l]east eight weeks for treatment." [Dkt. 29 at 9.] This is not supported by Mr. Bybee's testimony or the medical records. [*See, e.g.*, R. 499-500 (February 12, 2009 medical record indicating that Mr. Bybee missed one week of class because of a skin breakdown but that he reported he is "doing well" and "going to classes regularly and enjoying them").] Additionally, while Don attests that Mr. Bybee has withdrawn from three semesters of school, Mr. Bybee did not testify to that at the hearing and instead testified that he was taking classes two days per week, was roughly a sophomore, and that classes were going "good so far." [R. 826-27, 829, 835.] And while Mr. Bybee's father does not believe that his son would be able to work as a delivery driver, as the Appeals Council observed, his application for a medium-exertion job is relevant evidence of what Mr. Bybee believes his capabilities to be. [R. at 8.]

tom.kieper@usdoj.gov

John P. Young
john@youngandyoung.com